IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

MACIOROWSKI V. MACIOROWSKI

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KEITH E. MACIOROWSKI, APPELLANT,

V.

SUZANNE M. MACIOROWSKI, NOW KNOWN AS SUZANNE M. RIOS, APPELLEE.

Filed October 18, 2022.    No. A-22-063.

Appeal from the District Court for Sarpy County: STEFANIE A. MARTINEZ, Judge. Affirmed.

C.G. "Dooley" Jolly, of Adams & Sullivan, P.C., L.L.O., for appellant.

Eric M. Rees, of Blinn & Rees, P.C., L.L.O., for appellee.

PIRTLE, Chief Judge, and BISHOP and WELCH, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Keith E. Maciorowski appeals from the district court for Sarpy County, which modified previously entered custody and child support orders at the request of Suzanne M. Maciorowski, now known as Suzanne M. Rios. Keith does not challenge the modification of physical and legal custody. Rather, Keith's arguments on appeal pertain solely to the proper calculation of his child support obligation and the amount of attorney fees awarded to Suzanne. For the reasons that follow, we affirm.

## BACKGROUND

Keith and Suzanne are the parents of one minor child, Grace, born in 2004. Keith and Suzanne were married in November 1994 and divorced in October 2003, prior to Grace's birth. Because the parties were divorced prior to Grace's conception and birth, the decree of dissolution

- 1 -

made no provision for Grace's custody and welfare. Rather, such was established in a decree of paternity entered by the district court in May 2008. That decree ordered that the parties share joint legal custody, and Keith was awarded primary physical custody subject to Suzanne's parenting time set forth in an attached parenting plan. The court additionally ordered Suzanne to pay $220 per month in child support and ordered Keith to pay 100 percent of the costs incurred for Grace's education and extracurricular activities. Keith was also ordered to carry health and dental insurance, with Suzanne contributing a percentage of non-reimbursed health care expenses.

In March 2012, the district court entered an order of modification revoking Keith's final authority in the event of an impasse and limiting the right of first refusal in the event either parent was unavailable for scheduled parenting time. With respect to the former, the court found modification was necessary because Keith "utilized his 'final decision-making authority' . . . as a license to make unilateral decisions for the minor child and deny [Suzanne] participation." With respect to the latter, the court found the right of first refusal unworkable in that "[t]he parties, particularly [Keith], have taken actions to frustrate the exercise of this right as contemplated." The 2012 order did not modify Keith's obligations to pay 100 percent of education and extracurricular costs and to carry health and dental insurance.

In October 2013, the district court entered a stipulated order adopting a modified parenting plan which slightly modified provisions regarding parental decision-making and parenting time, but the order left the parties' financial obligations and the custody arrangement unchanged. In December 2016, the district court sustained Keith's motion to suspend Suzanne's child support obligation and her contribution to non-reimbursed health care expenses.

In February 2020, Grace began living with Suzanne full-time despite Keith retaining primary physical custody. The record reflects that Grace has continuously lived with Suzanne since that time, seeing Keith approximately once a week for dinner. Both parties were apparently satisfied with this arrangement. In light of this change in circumstances, on July 29, 2020, Suzanne filed a complaint for modification requesting sole physical custody and child support. Keith filed an answer, admitting that Suzanne ought to be awarded sole physical custody and that child support be set according to the Nebraska Supreme Court Child Support Guidelines. Keith generally denied any allegations not specifically admitted and specifically denied allegations that his relationship with Grace had deteriorated. At trial, Suzanne requested sole legal custody, citing the deterioration of the relationship between Grace and Keith. Suzanne testified that, even if she was awarded sole legal custody, she anticipated continuing to involve Keith in decisions typically associated with legal custody. Suzanne also requested attorney fees, citing Keith's frustration of the discovery process and associated delays.

The primary disputes at trial pertained to the proper calculation of Keith's child support obligation and Suzanne's request for attorney fees. Underlying both disputes was Suzanne's difficulty in obtaining a complete accounting of Keith's Veteran's Affairs (VA) disability benefit. Despite repeated attempts, including a court order compelling Keith to supplement discovery, Keith delayed for months his disclosure of roughly $1,900 in monthly VA disability payments. Not only did Keith fail to disclose those payments until months after they were requested, he apparently altered a document for the purpose of concealing them. Comparing exhibit 22, page 14, with exhibit 12 clearly depicts two versions of the same document, only one of which reveals the

VA disability payments. Keith's conduct was the subject of a pretrial motion for sanctions which the court granted, ordering Keith to pay $500 in attorney fees.

The record reflects that Suzanne earned $38,000 per year until shortly before trial when she obtained a new job earning $15 per hour. While Suzanne was making less than $38,000 per year at the time of trial, she requested that her prior salary be imputed to her for purposes of calculating child support. Keith's W-2s showed yearly incomes of $105,175, $110,116, and $152,747 for the years 2018, 2019, and 2020 respectively. Suzanne proposed that Keith's 2020 W-2 income be used for purposes of calculating child support. Keith was amenable to that request, but he requested that the court exclude approximately $30,000 in bonus compensation because he argued such was not "guaranteed."

Keith testified that he began working at "Perspecta" in January 2018 and that he did not have any formal agreement regarding bonus compensation. Keith did not receive any bonuses in 2018, and he earned one bonus of around $2,500 in 2019. Keith received two bonuses in 2020 for a total of approximately $30,000, but Keith described 2020 as "an anomaly" in that regard. Keith testified that his 2020 bonuses were split into two payments; one payment of around $10,000 sometime in August and a second payment of around $20,000 in "late November or early December." At the time of trial in October 2021, Keith had already received one 2021 bonus payment of around $9,800, and Suzanne suggested, consistent with the timeline of his 2020 bonuses, that Keith would receive a second larger payment at the end of the year. Keith, on the other hand, suggested the second larger bonus payment was speculative and asked the court to exclude his bonuses entirely from the child support calculation.

Suzanne further requested that child support be awarded retroactively to August 1, 2020, the first day of the month following the filing of her complaint to modify. While Keith did not dispute that child support should be awarded, he argued that retroactive child support was inequitable because he had voluntarily paid various expenses while the case was pending. In support of his request, Keith submitted an exhibit demonstrating over $32,000 in expenses including insurance premiums and costs associated with Grace's education and extracurricular activities. Included in the $32,000 of claimed expenses was nearly $17,000 associated with a vehicle supposedly purchased for Grace, but Grace testified that she did not use that vehicle.

After trial, on January 7, 2022, the district court entered an order of modification which awarded sole physical and legal custody to Suzanne. The court found that the change in legal custody was warranted "Given the advanced maturity of the child, the deterioration in the relationship between the child and [Keith] as well as the little involvement [Keith] has had in her life for the last year." Additionally, the court found Suzanne to be credible when she testified that she will continue to involve Keith in major parenting decisions.

With respect to child support, the court stated that "Based on all of the evidence received and the testimony and demeanor of the parties, the Court finds [Keith] to be less than credible." Accordingly, the court used Keith's total 2020 W-2 income and ordered Keith to pay $1,384 per month in child support. The court further ordered that child support be effective as of August 1, 2020, rejecting Keith's argument regarding his voluntary payment of expenses. In that regard, the court noted that "The vehicle [Keith] bought has never been used by Grace and the majority of the other expenses listed he was previously ordered to pay such as health insurance, medical expenses,

school lunches and activities." The court ultimately awarded Suzanne $10,000 in attorney fees, citing Keith's "intentional obstruction" of discovery and the associated delays.

ASSIGNMENTS OF ERROR

Keith assigns that the district court erred in (1) including Keith's bonus compensation for purposes of calculating child support, (2) failing to credit Keith for child-related expenses paid from August 1, 2020, to trial, and (3) awarding Suzanne $10,000 in attorney fees.

STANDARD OF REVIEW

When reviewing a trial court's determinations as to child support and attorney fees, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. See *Vanderveer v. Vanderveer*, 310 Neb. 196, 964 N.W.2d 694 (2021).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021). When the evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

ANALYSIS

*Calculation of Child Support.*

Keith first assigns that the district court erred in including his bonus compensation for purposes of calculating child support. The evidence demonstrated that Keith earned roughly $30,000 of bonus compensation in 2020 which was split into two payments of approximately $10,000 and $20,000 respectively. Keith argued that his 2020 W-2 represented an anomalous amount of bonus compensation which inequitably inflated his total income for purposes of child support. Suzanne, on the other hand, suggested that Keith stood to receive similar amounts of bonus compensation in 2021 and beyond, such that the 2020 W-2 was an appropriate measure of total income. At the time of trial, Keith had already received one 2021 bonus payment of around $9,800, which was consistent with the timeline of his 2020 bonus compensation. The court ultimately agreed with Suzanne, noting Keith's lack of credibility.

The Nebraska Supreme Court has refrained from setting a rigid definition of income for purposes of calculating child support, and instead has relied upon a flexible, fact-specific inquiry that recognizes the wide variety of circumstances that may be present in child support cases. See *Marshall v. Marshall*, 298 Neb. 1, 902 N.W.2d 223 (2017). Giving weight to the fact that the district court heard and observed the witnesses, we cannot say that the inclusion of Keith's bonus compensation for purposes of calculating child support was an abuse of discretion.

*Payment of Child-Related Expenses.*

Keith next assigns that the district court erred in failing to credit Keith for child-related expenses which he paid from August 1, 2020, to trial. During the entirety of this time, Keith was ordered to pay 100 percent of Grace's education and extracurricular costs. Keith was further ordered to carry health and dental insurance for Grace and cover 100 percent of non-reimbursed

health care expenses pursuant to the 2016 order suspending Suzanne's obligation to contribute thereto. Accordingly, Keith was clearly not entitled to any sort of credit for his payment of insurance premiums or costs associated with Grace's education and extracurricular activities. Furthermore, Keith concedes on appeal that the nearly $17,000 in expenses associated with the vehicle "are not proper for reimbursement." Brief for appellant at 19. With regard to the remaining claimed expenses, we cannot say that the court's failure to credit Keith for those expenses was an abuse of discretion.

*Attorney Fees.*

Finally, Keith assigns that the district court erred in awarding Suzanne $10,000 in attorney fees. On appeal, Keith does not dispute the delays caused by his conduct, although he maintains that the non-disclosure of his VA disability payments was an inadvertent oversight. Rather, Keith argues that Suzanne "weaponized" Keith's delayed disclosure of VA benefits to distract from her own misconduct. Reply brief for appellant at 23. For example, Keith points to Suzanne's decision to file her complaint prior to attempting mediation. However, Suzanne testified that she filed her complaint to preserve the issue of retroactive child support, and that she offered mediation "several times" thereafter. Moreover, the parties ultimately attempted mediation in the weeks prior to trial, but failed to resolve their disputes. Furthermore, while Keith does not challenge the court's award of sole legal custody to Suzanne, he argues that his claim for joint legal custody had merit and thus weighed against the court's award of attorney fees.

As a general rule, attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Wolter v. Fortuna*, 27 Neb. App. 166, 928 N.W.2d 416 (2019). Attorney fees and costs are statutorily allowed in paternity and child support cases. See *id.* (citing Neb. Rev. Stat. § 43-1412(3) (Reissue 2016)). Customarily, attorney fees and costs are awarded only to the prevailing party or assessed against those who file frivolous suits. *Wolter v. Fortuna, supra.*

In the present case, the district court found that an award of attorney fees was appropriate in light of Keith's frustration of the discovery process and related delays. The court rejected Keith's explanation for his non-disclosure of VA benefits and found that the record "clearly show[s] the intentional obstruction by [Keith] to disclose his total income to [Suzanne]." Moreover, Suzanne was the prevailing party on every disputed issue at trial.

At trial, Suzanne submitted an attorney fees affidavit as exhibit 29 which reflected total fees of $9,354.50. Exhibit 29 was received as an aid to the court without objection. Suzanne had previously been awarded $500 in attorney fees in relation to her motion for sanctions which was sustained prior to trial. Thus, Suzanne initially requested $8,854.50 in attorney fees, which accounted for the $9,354.50 in exhibit 29 minus the $500 previously awarded. On appeal, Suzanne argues that the award of $10,000 in attorney fees was appropriate in light of additional fees incurred during trial that were not included in exhibit 29.

We note that exhibit 29 does not include any descriptions of the services performed. While we would discourage this practice in future cases, we would also note that Keith did not object to exhibit 29 at trial, and he does not challenge the amount of fees reflected in the affidavit on appeal. Rather, Keith's primary argument on appeal is that the award should be reduced in light of

Suzanne's "unclean hands." Brief for appellant at 23. Moreover, Suzanne submitted three additional attorney fee affidavits as exhibits 27, 28, and 30, which exhibits do contain some descriptions of services. As exhibit 29 was a compilation of those exhibits plus additional fees, at least some of the fees contained in exhibit 29 correspond to descriptions of services contained in those other affidavits. Upon our de novo review of the record, giving weight to the fact that the district court heard and observed the witnesses, we cannot say that the district court's award of $10,000 in attorney fees to Suzanne amounted to an abuse of discretion.

## CONCLUSION

For the foregoing reasons, we affirm the order of the district court in all respects.

AFFIRMED.